May it please the court, counsel. I'd like to start my address to this court by focusing on issue number three in my appellate brief, and specifically the part that the government responded to in their brief that said that the count 15 having a being a predicate for count 19 doesn't matter as a jury question because the jury already found that count 15 was committed. I agree with the court up to the point where you say that he had a prior. The prior was, I see how then when count 19 came along made count 19. Was this a biting of the policemen's ear? That was a prior from Mississippi. Yes. Yes your honor there was that prior from Mississippi also. Is that what we're concerned with? I think we're focused on the prior from Mississippi is is certainly you know can be a biased response that that you shouldn't consider whether or not there was a whether or not the jury found the facts for the prior. They did not find the facts for any prior in this case except the government's position is that because count 15 is the prior gun offense that stood for the supported increased penalty. Counsel, doesn't this argument require overruling Elmendaraz-Torres or our cases following it? I think what it involves your honor is looking at Elmendaraz-Torres and certainly our the one case in this jurisdiction was Abrahamson. That was going to be my question. How do you get around that? Maybe it should be referred for the unbanked court your honor but this what you're on I think that follow our prior cases and you'll then decide if assuming you haven't succeeded on another issue whether to petition for re-hearing in bank or seek cert and hope that Justice Thomas can finally prevail. And if that's the case your honor I would certainly understand that that might be how the decisions. I think it's a waste of time this morning is the point I'm making. I have to respectfully disagree with the court that it's a waste of time this morning we've got. You have to distinguish our cases following Elmendaraz-Torres. Well we have to consider them in light of Allen is what we have to do. In the Allen case it certainly outlined an analysis and in a footnote I think was footnote number one. In Abrahamson was decided after Allain. It was decided after Allain and in Abrahamson the decision of course very well aware it simply said well because this issue wasn't raised in Allain that that the Elmendaraz-Torres precedent is undisturbed but it would would be helpful if there was a more detailed analysis of how that the when we've got Allain which is saying that as a matter of logic and law that when you increase the base how is it that that doesn't apply to subsequent precedent. And I don't think that any of the cases address that certainly Allain does not address that. And Abrahamson I respect that Smith simply states it and says that it specifically overturned. And I just respectfully would point out that this isn't a waste of time because until we get to that issue and get to an understanding of what the actual analysis is. What you have to understand is the Supreme Court has slapped our hands so many times for anticipating what they're going to do in the next case. That we just bow out of that. I'm sorry did I interrupt? Until there are five votes that actually overrule Elmendaraz-Torres. We follow it. Period. We have that. Because they lecture us when we don't. We have the Allain case which outlines an analysis of why in that case it was not appropriate. We've been over this in my 20 years more than 20 times. We are not going to speculate on where the Supreme Court is going when their later decisions seem inconsistent with a prior holding. Well I will move on but I would also note that when we look at this issue and the fact that it wasn't handled this way in the district court. That does not give us an opportunity to look at whether the indictment was proper. It doesn't give us an opportunity to look at whether it was part of the same offense. What would the jury have decided about whether this is part of the same offense. It's part of the same indictment. It forecloses any arguments that could have possibly been made on those issues and I respectfully submit that it could be sent back down to the district court to have those issues resolved. And still be in line with the precedent in Allain as well as Abrahamson. Before you go to the next thing I just wanted to ask one question. I mentioned the biting of the policeman. I don't remember whether it's your brief or your client's brief that says that it was not a violent crime. And I know you were not his lawyer except for the appeal. Am I not right? I started working on his case in the morning of the jury trial. So you didn't have much chance to do anything for him. He does claim incompetence of counsel and I'm wondering if the claim about the biting of a policeman's ear not being a violent crime could come under that claim of his which we generally don't hear on the direct appeal. It's a 2255. I think it could your honor. Fair enough. You answered my question. Moving on then to another issue. We have an issue with the search warrant in this case and that would focus on the Jardines decision. Another decision that ironically came out while this case was pending. And there's two issues that I want to focus on in the search warrant issue and that's the policy issue of why it is that a person who has an apartment is given a lesser protection than a person who has a home. And also the procedural issue that in this case Mr. Hunter was essentially cheated out of having this issue fully examined. As the procedural calendar would show, it was originally raised by the council of record, the original council of record, but at a time when Jardines had not been decided. In the interim, Jardines was decided and Mr. Hunter took over his own representation and he re-raised the issue. I dispute the government's position that it was properly addressed in the, and this is moving on to the idea that procedurally he did not get a hearing on this. The magistrate's recommendation was that it simply be overruled because, really because it was previously decided but never looking at the Jardines analysis. The magistrate went on to say that the good faith rule was applied, but the magistrate, when you look at that report and recommendation, did not make the analysis, simply made a reference to the idea that it was previously decided, previously applied, and then that was adopted subsequently. That's an issue that Mr. Hunter raised and was not raised by his prior council and so it was never fully ventilated. We also know that on that issue... Isn't there a case that we had on that issue saying that a hallway does not have the same aspects as a curtilage around a home? There is, Your Honor, but I respectfully submit that that decision and that line of cases all predates Jardines. I'm not aware of a subsequent decision that would support that. Coming back to my policy issue, I think that it's an open question at this point as to when the curtilage or what the curtilage is. We know this was a locked area. We know that this was not freely available to the public. Wouldn't Leon Goodfaith save this in the end anyway because Davis, U.S. v. Davis, says that they can rely on precedent that was pending at the time? It may, but it wasn't ever analyzed in the district court. And I dispute that the precedent that was pending at the time was still good precedent by the time this issue was actually raised in the district court because I do think Jardines calls it into question. Looking at Jardines, it was a house. But Jardines was decided after the search? After the search, but... Because, Your Honor, as the court correctly points out, it was decided after the search, but the decision that was made after the search simply referenced and said this was decided previously by the district court, by the magistrate, and that it can't be re-raised. That's what happened in this case procedurally. I disagree. I mean, the decision was made after, but it was really just a relying on a prior decision that was made before Jardines. How can it be any different than the GPS case we decided? It was Ed Brooks. I know I wrote it. Where the reliance was, well, the case the defendant relied on was pending in the Supreme Court. And the Eighth and Ninth Circuit law enforcement people kept relying on precedent in their circuits, and we said Leon applies. It doesn't matter that the issue was stirred up and lots of people were saying Jardines should happen or, you know, the case, the GPS case should happen. No, Jardines did happen. It happened during the pendency of this case. And it opens up the issue of what we're going to consider the curtilage, it changes the analysis. The reliance is on the prior Eighth Circuit ruling that Judge Bright referred to. That's the Leon reliance. But in this case, it was never, that's the cheated-out-of-the-hearing portion of my discussion. But the reliance is the people executing the search, not a court subsequently. We're looking at the good faith of relying on that warrant that was issued. Well, it wasn't litigated in the district court, so we don't, the record wasn't developed on that. Developed in what way? Well, looking at how the search was conducted, having a meaningful hearing on the issue, having a meaningful analysis of whether or not there would be any exception to this. Well, they could have had a hearing on the difference between this search and the search in our prior case. They tried to, they tried to, but it was never analyzed by the district court. Analyzed in what way? With the benefit of Jardines? Yes. That's not Leon, that's not Leon. Jardines does, Jardines does not require a remand for a Leon hearing because Jardines somehow changed the equation. That's a misunderstanding of the Leon doctrine. It was summarily looked at on Leon, and when it was re-raised and re-litigated, it wasn't analyzed, Your Honor. It wasn't even looked at. It was just said we already, we already thought about the Leon exception and we're not going to look at that ruling again. Thank you. I'll reserve the rest of my time for rebuttal. Thank you. Mr. Hollenhorst? May it please the Court, Tom Hollenhorst of the United States. I was one of the prosecutors in the case. My co-counsel, unfortunately, cannot be here today because she's in trial. I'd like to start off by just talking about the evidence in the case because it overlays, I think, the issues here, and that is the harmless error doctrine and, of course, the plain view, or the plain error doctrine. Here we have a case that is overwhelming in guilt. The evidence just came piling in in the form of videotapes, telephone conversations, text messages. This case culminated with two significant transactions, one on May 2nd and one on May 22nd, and in both of those transactions, for example, on May 2nd, there was an undercover meeting between the case agent and the defendant on videotape. The jury saw the videotape. In that tape, the defendant says, I've got everything in the city, guns, ice, everything. Then the defendant sent pictures of that first gun by text. Then the case agent met again with the defendant at the scene of that first meeting where the transaction occurred. The May 22nd case is just the strength of the government case. Is that in your brief? Yes, Your Honor. Why do we have to hear it when we've read it? That's okay, Your Honor. I'll move on. I mean, there's not a sufficiency challenge, right? No. No. I think that to the extent, though, that the court were to find any error as alleged by the defense, then I think that if the court looked into harmless error, then my point is that the case is overwhelming. Okay. I mean, that may be relevant. One of the aspects of this case that is not raised in the brief and would have nothing to do with reversal, but it bothered me a little bit, the local police, drug people, started with this case with some of the co-conspirators a month or two before. At that time, this particular hunter was known as a conspirator, and they followed him up. But I was a little concerned that they could have arrested the conspirators initially, but they let it go. Of course, they kept—and I'm not saying that there's anything wrong with it— but they kept working with Hunter and finally got him to the machine gun deal, where now you've got a 42-year-old person who's serving a mandatory life sentence without parole, which is a very, very—I know he's no angel. This guy's got a bad record. But nevertheless, there's no actual violence in this case at this time. No shooting of the shoot gun, the machine gun. And it's a very heavy sentence. And, of course, this is before the attorney general raised the question about heavy sentences in drug cases. Is there any reason that they didn't have an arrest right away? Do you know anything about that? Well, Your Honor, I think that you have correctly stated the nature of the investigation. There was ample evidence against Ms. Gelo early on. She had engaged in several drug transactions. The police believed, however, that she was being supplied and essentially being used by her live-in— I know this was a follow-up case. Yes, Your Honor. And the case went on. That's sort of what I thought, but I was concerned. I have a little bit of concern about it. All right. And it is a heavy sentence. There's no doubt about it. However, this is a defendant who is a recidivist who had a prior federal drug conviction for which she was sentenced to 188 months before the same district court judge, Judge Montgomery. I'd like to address the dog sniff briefly. First of all, Jardines—and I'm not sure if that's how you pronounce it, but that's the way I'll do it— that case was decided on March 26, 2013. Decided after this case went to trial. So whether or not the magistrate judge and the district court were addressing dog sniffs, they did not have the benefit of Florida v. Jardines to consider. And when one considers that this search, this dog sniff did occur— and now I'm falling into the trap. I'm not going to call it a search. But this dog sniff occurred on July 24, 2012, eight months before the Jardines decision. It puts it in context. And as the court has correctly discussed with my opposing counsel here, the precedent of this circuit was undeniably clear at that time. The court chose to go with good faith and didn't really address the probable cause issue. But moving to that, it's interesting to note that the magistrate judge who filed the R&R in this case was the same magistrate judge who actually signed the warrant. So he clearly found probable cause at one time in signing the warrant. But that's neither here nor there because this court, of course, has the authority under its own precedent to review the four corners of a search warrant, just as the district court did. So we feel that there is probable cause, certainly with the dog sniff evidence. But even if one were to excise that dog sniff, this was a warrant that was based on a nine-page affidavit replete with drug deal after drug deal occurring at or about that house, or that residence, that apartment. Yes, Your Honor. No. That's where Jardine came out later. We don't have to go into probable cause. That's a different issue than what was actually decided in the district court. But it may be that we have to look at that too. Right, Your Honor. And this court has, as I'm sure the court is aware, recently ruled on a similar issue in United States v. Holloman, 743 Fed 3rd, 1152. Are you brief? No, because this case came out after. What's your name? U.S. v. Holloman, H-O-L-L-E-M-A-N. And the site? 743 Fed 3rd, 1152 at 1159 8th Circuit. All right, you can also give us a 28J letter if you would. Okay, I will do that, Your Honor. Thank you. So moving on to some of the other issues in the case very briefly, the claims of prosecutorial misconduct, even if there was some error, that's why I think that we argued initially here that it's certainly under either plain error doctrine or harmless error doctrine that didn't amount to much at all. The first argument concerns the reference to children. A close study of the record here shows that the very first objection that the defense made to the mention of children really was a general objection that was more toward the form of the question, and that's how Judge Montgomery interpreted it. Because once basically the same question was asked again by my colleague and the children came up, that was the time we approached, and that is the time where Judge Montgomery gave her cautionary remarks to counsel.  And that's why I think it's kind of obvious from the record when one reads it that when asked more generally about the transaction, the witness then kind of marched back into reference to children, and Judge Montgomery then admonished him and informed him that a ruling had been made. Now, unfortunately, the same thing happened later in the afternoon with one of the other agents, and I handled that witness, and I promptly admonished him to confine his statements to the people who were relevant. But even if there were some error there, Judge Montgomery made a very thorough record on that and made a finding that although it's arguably relevant that she wanted to keep it out. So she really did a 403 balancing, and she stated her reasons. So it's not really one of prosecutorial misconduct. I think it's really a 403 analysis that was properly done by the district court. The reference to big dogs, although perhaps not a good choice of a phrase, is equally without merit here, the argument that it's somehow caused prejudicial error. My colleague made reference to both the case agent and the defendant as big dogs, and it's clear again from the context of the transcript and the trial record that she was simply referring to them as the big people, as the urban dictionary would define it, and it has been quoted by at least one federal district court, that the term is used to mean someone important, someone big, and clearly the defendant was someone big in this case. The third allegation involves comments as to the defense theory of the case as to the integrity of the drug evidence. And again, a close reading of the record shows that my colleague, when making that argument, was confining her argument at that point to the defense that somehow the drug evidence was tainted. She wasn't making a broad attack on the defendant's ability to raise the defense, or she didn't really even comment on any of the other defenses that were raised. So I think when read in the context of the record, there was no error in her argument. Can I ask you another question? Yes, Your Honor. Evidence matters, I don't think, usually don't require a reversal, but one of the items I wanted to ask you about is, you know, his counsel was, the present counsel got into the case the day of the trial or the day before the trial. He does make an allegation, which generally falls under 2255 of incompetence of counsel. And one of the items under there that I noted and I asked counsel about was whether or not the biting of a policeman's ear was a crime of violence. And I know there's been some new Supreme Court in other cases, so it might have to be taken a look at, but who was he charging? I don't, was he charging present counsel with incompetence, or does he go back to the earlier counsel, or can't we tell? I think he's, unfortunately, I have to say it in front of him, I think that he's alleging that Mr. Plunkett was ineffective at sentencing for not having raised, I think the defendant in his pro se brief is saying that Mr. Plunkett was ineffective at sentencing for not having raised the issue. At sentencing? Yes, Your Honor. Oh, okay, so it was present counsel. Yes, Your Honor. Okay. Your Honor. Yes, okay. I would note, however, that, first of all, the PSR in the case at paragraph 78 clearly describes the offense and the charging language, and the defendant was charged with willfully, unlawfully, feloniously, and purposely causing bodily injury to this police officer. So I think that under any analysis that that would qualify as a crime of violence for purposes of the career offender provisions. But even if it didn't, it's somewhat academic because, as the court has noted, this case is driven, this sentence is not driven by the guidelines, it's driven by the mandatory minimum, and that is the life sentence that was mandated for the machine gun count. So even if there were some technical problem with the career offender application, it's wholly academic in this case. That leaves us with the defense counsel's first argument, and I don't think I need to say much on that given the court's questions, but we feel that this is in the heartland of precedent and that the jury verdict was not only constitutional but done exactly the way it should be done, and therefore we feel there's no merit to the defense final argument. Without further questions, that's all I have, Your Honors. Thank you. Does Mr. Plunkett have some time? He has two minutes. Fair rebuttal. I just want to respond to the issue of prosecutorial misconduct that was discussed with Mr. Hollenhorst. I disagree that the reference to children was originally raised as a general objection. Of course, any time you're in a trial, you don't want to make an objection in a way that draws more attention to the misconduct. We approached on that issue, the prosecution was admonished, and then co-counsel for the government revisited the issue after they'd been told to. The initial objection, I wouldn't say it was a misconduct objection. It was basically a 403 objection, wasn't it? Sure, this may be relevant to what happened, but in the context of this trial, it's unduly prejudicial, and the district court agreed with that analysis. That was not condemning the questioner for misconduct, right? I think when the counsel approached, and the questioner went back to the issue of children being present, yes, they were told not to do that anymore, and then they turned around and said, well, another question about who else was present, which caused the witness to comment that children were present. The decision by the prosecutor at that time to revisit something that didn't really seem to matter aggravated that. And I agree, it came up again with another government witness, and to Mr. Hollenhorst's credit, he addressed it as quickly as he could, but of course the cat was out of the bag. I'm more concerned about the idea that in closing, that the defense was disparaged. I think that's a more difficult thing to handle because it can't be corrected. And the prosecution is saying that the only real issue here is the integrity of the evidence. When you look at the trial transcript, especially on count one, there's a very real issue about identity. The person who was testified to was a different height, different skin tone, many different things, and had a different nickname. He had a nickname, I think, Loco or something like that. And I don't think that that can be looked at as cumulative error. And then the other errors are meaningless errors, nothing further, unless there's a specific question. Thank you, counsel. The case has been thoroughly briefed and argued. We'll take it under advisement. Please call on the next case.